## A. M. Morales *v.* B. Marigny, her husband.

The matters treated of in the law 29 of title 11 of the 4th Partida concern the *forum*, and have no application in the courts of Louisiana.

Although the parties to a marriage contract have submitted themselves to the laws of a foreign country, as to the interpretation of the contract, the jurisdiction of the tribunals of this State, where they actually reside, must be exercised in accordance with our own rules of law.

The community of acquests and gains between husband and wife did not exist as a part of the general law of Spain ; it prevailed in certain provinces of the king lom, and not in others.

Although by the laws of Spain the ownership of the effects acquired during marriage is governed by the law of the province where the marriage was contracted, and not by that to which the spouses remove, yet this is only to be understood of such effects as are acquired in the former country, and not of such as are acquired in the latter.

The wife, under the laws of Spain, as well as under our laws, is entitled at any time to resume the administration of her paraphernal estate.

APPEAL from the Third District Court of New Orleans, *Duvigneaud,* J.
*P. E. Bonford,* for plaintiff, argued :

1. Under the marriage contract, the sums to be received by defendant for plaintiff were paraphernal, and did not enter into the community.

The reasons given by the District Court for adopting this interpretation are conclusive.

The same construction has invariably been given to the contract by the defendant. See his receipt, in which he says that the clause relied on was "*pour la conservation des droits de la dite dame.*" See also his answer in this case, in which he formally admits he is the plaintiff's *debtor* for the sums received by him.

2. The court erred in rejecting from plaintiff's demand—

1st. The sum of $20,239, being the estimate value of the lands asserted to be valueless from defect of title, and alledged to be included in the receipt for $50,000, of the 4th March, 1818.

Because there are no legal or sufficient proofs that the transfers taken from *Chapella* or *Jorda* were the lands referred to in *Morales'* letter. *Morales* says they cost him more than $20,239, whereas these concessions cost but $6,400.

But more particularly, because these lands *did enure* to the benefit of defendant.

He transferred them *without warranty,* and *without recourse upon him,* to the Citizens' Bank, in part payment of a debt he owed that corporation.

This seems to have been overlooked by the Judge below.

This was in 1845 ; it was only in 1850, the Supreme Court of the United States, reversing the decision of the District Court, held these grants to be void. See *Reyne's* case, 9th Howard.

2dly. In rejecting the claim for $2,000, the sum received from *McGuillemard.* The lands which it is said are represented by this receipt were also transferred in like manner as above to the Citizens' Bank, and thus enured to the benefit of the defendant.

3dly. The District Judge also erred in the estimate made of the defendant's general indebtedness.

That the gross amount of his indebtedness is $88,171 instead of $57,832 and considerably exceeds the estimate of his means, viz, $70,611.

For these reasons, the appellee prays that the judgment of the court below be amended, by allowing the sum of $56,171, instead of $33,852, and by decreeing the separation of property prayed for, and that thus amended, the same be affirmed.

MORALES
v.
MARIGNY.

*Alfred Hennen*, for defendant, argued :

1. Plaintiff has no paraphernal property.  By the marriage contract, all property given by, or inherited from her father, was to enter into the community. This was a valid and legal stipulation, and should be enforced.

2. By the clause No. 5 of the marriage contract, the Spanish law was to become the rule of decision of all controversies which might arise under, or concerning it.

If the plaintiff has any paraphernal property, she makes out no case, according to that law, by her petition or proof for claiming it.

The defendant is not insolvent, and if he were, by misfortune, but not from his misconduct, the Spanish law gives the wife no right of action.   The law of Louisiana cannot be invoked to decide this controversy.

3. The bill of exceptions to the evidence of the plaintiff was correctly taken, and that evidence should be disregarded, though found in the record.

4. The amount of property received from the father of the plaintiff by the defendant was correctly settled by the court below—$33,832.

5. The defendant is solvent, and able to pay any claim the plaintiff may have against him.

6. The judgment should be reversed, and the plaintiff nonsuited.

Partidas, lib. 4, tit. 11, laws 7, 16, 24 and 29, and gloss. of J. Lopez thereon ; 4 Febr., p. 169, No. 9, ed. 1817 ; 5 An. 408 ; 5 M. 83, *Murphy* v. *Murphy ;* Gomez, Law of Toro 50, No. 44 ; 1 Escriche, 445 ; 9 Howard Rep. 127, *Reynes* v. *United States ;* 2 Kent's Com. 459 ; Pandects, lib. 23, tit. 3, l. 6, ⅔ 2 and 12 ; Code, lib. 5, tit. 18, l. 6 ; 8 Rodri., 143 ; Azo, p. 489, No. 17.

BUCHANAN, J.   The law 29 of title 11 of the 4th Partida does not apply to this case.  First, because it speaks of dowry alone, and this is not a controversy about dowry.   Second, because the matters treated of in that law concern the *forum*, and must be governed by the rules of practice in Louisiana.

1. The petition claims $30,000 for a donation *propter nuptias ;* but this portion of the claim is discontinued.   All the remaining claims are paraphernal, and the answer of defendant acknowledges an indebtedness equal to the amount for which judgment is rendered.   *Note*, that defendant has discontinued his claim in reconvention for $6000.   But the counsel of defendant argues that paraphernal property, under the Spanish law, is governed by the same rules as dotal *when the dominion of the* paraphernal effects is given by the marriage contract to the husband.   That is not the case here.   See the reasoning of the District Judge on this point, which is conclusive.

2. The parties submitted themselves, by their marriage contract, to the law of Spain as to the interpretation of their rights and claims upon each other ; but they did not, and could not, oust the tribunals of this State, the place of their intended and actual residence, of jurisdiction of their disputes ; and that jurisdiction is necessarily to be exercised according to our own rules.   We must look to Articles 2345 and 2399 of our Code, to know when a restitution of the dowry may be sued for in Louisiana, and not to the 29th law of title 11 of the 4th Partida.

We conclude that, both by the judicial confessions in the answer of defendant, and by the terms of the law 29 of the Partida, as well as by the rules in relation to the jurisdiction, that law is excluded from our consideration.

*Second point.*   But the counsel of defendant asserts that the sums comprised in the receipts of defendant in favor of his wife are not dotal, but effects of the community of acquests ; and he relies upon the expression at the end of the second clause, " *entraren en la comunidad*," " shall enter into the community."

Upon this point, we may remark with the Judge of the court below, that the obligation imposed upon defendant by that same (second) clause of the marriage contract, to give written receipts and acknowledgements for all sums to be re-

ceived on account of his wife, is inconsistent with the idea that it was the inten- <span style="float:right">MORALES<br>*v.*<br>MARIGNY.</span>
tion of the parties to transfer the ownership of such sums to the defendant.

*Again,* the community of acquests does not seem to have been part of the gen-
eral law of Spain ; it prevailed in certain provinces of the kingdom, and not in
others. This is perfectly plain from the 24th law of the 11th title of the 4th Par-
tida, p. 532 of Moreau & Carleton's translation, and from the Gloss. of Gregorio
Lopez, translated in the notes on pages 533 et seq. From that law and that
Gloss. (recognized in Spain as of equal authority with the text,) it likewise ap-
pears that, although the ownership of the effects acquired during marriage is
governed by the law of the country or province where the marriage is contracted,
and not by that of the country to which the spouses remove ; yet this is only to
be understood of such effects as are acquired in the former country, and by no
means of such as are acquired in the latter. But all the sums received by de-
fendant on account of his wife, were so received *in Louisiana,* many years after
their removal to this State. But however this may be, the defendant has es-
topped himself by his pleadings.

The defendant is concluded by the admissions in his answer, which states as
follows : " And further answering respondent says, that deducting the aforesaid
sum of $6,000 from the amount which (from his admissions above) was actually
received by him from his wife, to-wit, thirty three thousand seven hundred and
nineteen dollars, *he remains her debtor* for the sum of $27,719 ; for which amount
alone she can have judgment against him, if she succeed in showing she is enti-
tled to the separation of property prayed for."

How can defendant be tolerated, after this formal admission of indebtedness to
his wife for those sums received, in now asserting, through his counsel, that these
sums belonged to himself as head of the community ?

The judgment of the District Court has followed, step by step, the admissions
of defendant's answers. He has been allowed all that he demanded, and we are at
a loss to perceive of what he complains. For as to the resumption of the ad-
ministration of her paraphernal estate by the plaintiff, her right is absolute, not
only under the Code, but even under the law 17 of the 11th title of the 4th Par-
tida, quoted by defendant's counsel. Moreau & Carleton's Partidas, p. 523.

There is an answer to the appeal, praying for an amendment of the judgment,
by allowing to plaintiff the amount of defendant's receipts, rejected by the Dis-
trict Court.

That amount represented some forty thousand acres of land east of the Missis-
sippi river and west of the Perdido, granted by *Morales,* as Governor of Florida,
to defendant, after the cession of Louisiana to the United States—grants which
have been decided by the Supreme Court of the United States to be invalid
*Reyne's* case, 9 Howard.

That amount receipted for, on this account, by defendant, would, therefore, ap-
pear to have been properly deducted from the plaintiff's claims. But her counsel
contends that this amount has been available to defendant in payment of his
debts ; these Florida grants having been assigned by defendant, with a great
deal of other property, in October, 1845, to the Citizens' Bank, in payment of a
large debt due by defendant to that bank ; which assignment was made expressly
without any warranty of title whatever.

But it is extremely difficult, if not impossible, to assign any fixed value to
these lands specially, in the *dation en paiement* in question. No estimation is
made of any of the various pieces of property and tracts of land, included in the

MORALES
v.
MARIGNY.

same. And we cannot say, therefore, to what extent the defendant has benefited by this assignment of those grants.

Under all the circumstances, we are not prepared to allow the amendment prayed for by appellee.

It is, therefore, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.

---

NOTE.—*Reasoning of the District Judge referred to in the preceding opinion.*

Assuming then, for the sake of argument, that this case is to be decided under the Spanish law, although the plaintiff has permitted her husband to receive from others her paraphernal property and administer it, the record furnishes no evidence whatever, that she ever, either expressly or impliedly, gave it to him, with the intention that he should have dominion over it *during the marriage*.

Indeed, as I understand, the defendant's counsel, he relies upon the second clause of the marriage contract, for a very different purpose. He relies upon it as showing, not that plaintiff agreed beforehand that all her future property should pass under the dominion of her husband, temporarily only, and while the marriage might last, but as showing that it was to pass forever into the " *comunidad,*" in other words, that she should never have any paraphernal property ; that everything coming to her after marriage, should become " *bienes gananciales,*" and such, in my opinion, is the only interpretation favorable to the defendant, which the clause will bear.

It was inserted in the contract for such a purpose. I do not know in what light it would be considered by a Spanish tribunal, there being no corresponding obligation on the part of the husband. See Escriche, verbo " *Comunidad de bienes.*" But, so far as concerns property accruing to the wife in Louisiana, it would become an important enquiry how far it conflicted with the policy of the State, which makes children forced heirs of their parents, and which is, also, the foundation of some of the Articles of the Code, which regulate the relation of husband and wife.

But in my opinion it was framed for no such purpose. Escriche in his *Diccionario razonado,* verbo " *Bienes gananciales,*" after explaining the meaning of the term, observes : " Como en algunos casos pueden suscitarse dudas sobre si ciertos bienes son ó no de esta clase, es necesario tener presente, para mayor aclaracion de algunos puntos que ocurren, que se reputan gananciales los bienes propios del marido ó de la muger que se encuentran de tal suerte mezclados ó confundidos, que no se sabe á cual de ellos pertenecen, y ninguno de ellos puede acreditar su derecho de propriedad, ley 4, tit. 4, lib. 10, Nor. Rec. ; por cuya razon, al contraerse el matrimonio suele otorgarse escritura pública en que conste los que tenia cada consorte.

The defendant at the time of the contract had a large property ; in pursuance of the custom there spoken of, it is all described. The plaintiff had none ; but she expected to receive some after the marriage. Hence the stipulation, for her equal protection, that the defendant should make a written acknowledgement in her favor, every time property should accrue to her during the marriage.

It is evident that such acknowledgements would have been useless to her, if all her property was to become " *bienes gananciales,*" since, by such an arrangement, she would loose all separate right to it ; and whatever might have been her con-

tribution, and even if she had made none, she would, at the dissolution of the marriage, be entitled to neither more nor less than half of the "*bienes gananciales.*"

This view of the case is confirmed by the 5th clause of the contract which first, in general terms, places the contract under the protection of the Spanish law, and then expressly states that the "*gananciales*" shall be regulated by it.

Property accruing to either spouse by inheritance does not become "*bienes gananciales*" by force of that law. It is more than confirmed by the answer of the defendant, who admits that he owes his wife a very large sum, received on her account during marriage, though denying her right to recover it now.